Dirk O. Julander, Bar No. 132313
  doj@jbblaw.com
M. Adam Tate, Bar No. 280017
  adam@jbblaw.com
JULANDER, BROWN & BOLLARD
9110 Irvine Center Drive
Irvine, California 92618
Telephone:  (949) 477-2100
Facsimile:  (949) 477-6355

Attorneys for To Be Limited Partnership

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TO BE LIMITED PARTNERSHIP an Arizona limited partnership;<br><br>Plaintiff,<br><br>vs.<br><br>JUDE HUDSON, an individual; ROSALIE HUDSON, an individual; and nominal defendant PARAGON TECHNOLOGY & DEVELOPMENT, INC., a Delaware corporation;<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>1. **BREACH OF FIDUCIARY DUTY;**<br>2. **EMBEZZLEMENT/ CONVERSION;**<br>3. **CORPORATE WASTE**<br>4. **UNJUST ENRICHMENT**<br>5. **ACCOUNTING**<br>6. **APPOINTMENT OF RECEIVER**<br><br>**JURY DEMAND** |

Plaintiff TO BE LIMITED PARTNERSHIP ("Plaintiff") hereby alleges as a complaint against defendants JUDE HUDSON ("Mr. Hudson"), ROSALIE HUDSON ("Mrs. Hudson"), nominal defendant for the purpose of asserting derivative claims PARAGON TECHNOLOGY & DEVELOPMENT, INC. ("Paragon" or the "Company") and DOES 1-10 as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter under 28 U.S.C. Section 1332(a)(l) on the basis of diversity of citizenship because (1) the amount in controversy exceeds $75,000, (2) the parties are citizens of different states, and (3) there is an actual controversy between the parties.

2. Venue in this District is proper under 28 U.S.C. Section 1391(b) and 1391(b)(2) because all of the named defendants reside within the District and because a substantial part of the events or omissions giving rise to the claims occurred in within the District.

**PARTIES**

3. Plaintiff is, and at all relevant times was, an Arizona limited partnership. None of Plaintiff's partners are citizens of California.

4. Mr. Hudson is, and at all relevant times was, an individual. Mr. Hudson currently resides in Los Angeles, California.

5. Mrs. Hudson is, and at all relevant times was, an individual. Mrs. Hudson currently resides in Los Angeles, California. Mr. Hudson and Mrs. Hudson are husband and wife.

6. Nominal defendant Paragon is, and at all relevant times was, a Delaware Corporation with its principal place of business in Los Angeles, California.

7. The true names and capacities, whether individual, corporate, or otherwise of the Defendants named as DOES 1 through 10, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to state their true names and capacities when the names are ascertained. Plaintiff is informed and believes and, based thereon, alleges that each such fictitiously named Defendant is in some manner liable for the acts hereafter alleged. Hereinafter, Mr. Hudson, Mrs. Hudson, and the defendants named as DOES 1 through 10 will sometimes collectively be referred to herein collectively as "Defendants."

**DEMAND FUTILITY**

8. As detailed below, this Complaint generally alleges that Defendants breached their fiduciary duties, committed corporate waste, and embezzled / converted property of the Company. Amongst other things, Defendants loaned

themselves hundreds of thousands of dollars in undocumented interest free "shareholder loans", caused the Company to pay for their extravagant personal residence and lifestyle, put Mrs. Hudson's mother on the Company payroll even though she did not perform any work for the Company, caused the Company to pay hundreds of thousands of dollars directly to Defendants' parents, and assigned themselves company stock without consideration.

9.     As of the filing of this Complaint, Paragon's board of directors is comprised of three persons with Mr. Hudson and Mrs. Hudson holding two of the three positions, thus exercising control over Paragon.

10.    Based upon applicable law (including, but not limited to, FRCP 23.1(b)(3)(b) and California Corporations Code §800), the facts alleged in this Complaint, and the longstanding rule that equity does not compel a useless and futile act, Plaintiff is excused from any requirement to make a formal request to the board of directors to bring the instant action.  Such demand is excused because (1) a pre-submission demand would be a futile and useless act as the majority of the board of directors are not able to conduct an independent and objective investigation of the alleged wrong doings, (2) a pre-submission demand would be a futile and useless act as it would require Mr. Hudson and Mrs. Hudson to vote to recommend bringing an action against themselves, and (3) the wrongful conduct alleged is not subject to the business judgment rule.

## FACTUAL BACKGROUND

11.    Mr. Hudson is an ex-convict who was convicted of gun running across the Canadian border in or about 2005.  His wife, Mrs. Hudson, was a stripper until she became a successful female dominatrix online.

12.    In 2013, Defendants created a platform for online adult content based on Mrs. Hudson's experience as a dominatrix.  The adult content platform is owned by Gatsby Enterprises, Inc. ("Gatsby"), a California Corporation, which in turn is wholly owned by nominal defendant Paragon.  Hereinafter, Paragon and its

subsidiary Gatsby are collectively referred to as "Paragon" or the "Company."

13. Defendants have always had complete control over Paragon. Since its inception, either Mr. Hudson or Mrs. Hudson has always served as Paragon's chief executive officer. Mr. Hudson also owns 100% of Paragon's Class A Common (voting) stock and approximately 51% of the Company's total shares.

14. Plaintiff was first introduced to Mr. Hudson in or about April 2014. That same year, Mr. Hudson induced Plaintiff to loan $20,000 to Paragon by way of an initial promissory note.

15. Over the next several years, Mr. Hudson repeatedly returned to Plaintiff claiming that Paragon was experiencing cash flow issues and that Paragon needed additional capital in order to maintain its operations. Mr. Hudson represented that unless Plaintiff provided the needed capital, the Company would go under and Plaintiff would lose his entire investment. Over and over again, Plaintiff loaned monies to Paragon believing that he needed to do so in order to save the Company. As of January 2019, Paragon owed Plaintiff approximately $2,540,000 from twelve different transactions as follows:

| Note | Amount |
| --- | --- |
| Paragon Technology and Development, Inc. Loan Agreement, dated April 1, 2016 | $100,000 |
| VIPr Investment Agreement, dated August 30, 2016 | $90,000 |
| Paragon Technology and Development, Inc. Funding Agreement, dated April 18, 2017 | $150,000 |
| Paragon Technology and Development, Inc. Funding Agreement, dated June 12, 2017 | $450,000 |
| Paragon Technology and Development, Inc. Funding Agreement, dated September 27, 2017 | $100,000 |
| Paragon Technology and Development, Inc. Funding Agreement, dated November 1, 2017 | $150,000 |
| Paragon Technology and Development, Inc. Funding Agreement, dated December 18, 2017 | $200,000 |
| Paragon Technology and Development, Inc. Funding | $200,000 |

| | |
|---|---|
| Agreement, dated February 9, 2018 | |
| Paragon Technology and Development, Inc. Funding Agreement, dated June 6, 2018 | $400,000 |
| Paragon Technology and Development, Inc. Funding Agreement, dated August 2, 2018 | $300,000 |
| Paragon Technology and Development, Inc. Funding Agreement, dated December 19, 2018 | - |
| Paragon Technology and Development, Inc. Funding Agreement, dated January 7, 2019 | $400,000 |

16. During this time period, April 2014 to January 2019, Plaintiff also acquired approximately 30% of Paragon's common stock. All of Plaintiff's shares are Class B (non-voting) shares.

17. The above loans were expensive for the Company. The interest rates on the notes rates were relatively high and the Company had to surrender stock in order to induce Plaintiff to continually invest more money. Plaintiff alleges on information and belief that more affordable forms of financing were not available to Paragon because the Company's financial statements did not reflect a net profit.

18. In or about March 2019, at Plaintiff's request, Paragon hired Robert Lunny ("Mr. Lunny") to be the Company's chief financial officer. Plaintiff requested that Mr. Lunny be hired to help solve Paragon's consistent cash flow issues. Before Mr. Lunny, Paragon had never before hired an executive with any meaningful experience and did not have a dedicated controller or accountant.

19. Upon being given access to the Company's records, Mr. Lunny discovered that Paragon's cash flow issues were largely attributable to the fact that Defendants had been looting the Company and were using corporate funds for their own benefit. Specifically, Mr. Lunny discovered all of the following:

    a. Defendants had borrowed hundreds of thousands of dollars from the Company in undocumented interest free "shareholder loans." These shareholder loans were often taken out at times when Company was operating at a loss and when

Paragon was borrowing money from Plaintiff.

        b.     Defendants were causing the Company to pay for Mr. and Mrs. Hudson's extravagant personal residence and lifestyle in West Hollywood, California.

        c.     Defendants had put Mrs. Hudson's mother who did not work for the Company on Paragon's payroll.

        d.     Defendants had caused the Company to directly pay Mr. Hudson's parents hundreds of thousands of dollars.

20.    Plaintiff alleges on information and belief that, but for Defendants' defalcations alleged in the preceding paragraph, Paragon could have operated at a profit and therefore avoided or paid down the debt to Plaintiff and made distributions to Plaintiff and the other shareholders.

21.    In or about June 2019, Mr. Hudson once again approached Plaintiff requesting additional monies to supposedly fund Paragon's operations.  Plaintiff agreed to loan additional $100,000 to Paragon, but in August 2019, insisted that the outstanding amounts owed on the loans between Plaintiff and Paragon be consolidated into an Amended and Restated Promissory Note (the "Promissory Note") secured by the Company's assets.  The parties executed the Promissory Note on August 29, 2019. A true and correct copy of the Promissory Note is attached hereto as **Exhibit A.**  Even after entering into this secured Promissory Note, Defendants continued to take money from the Company to support their extravagant lifestyles.  Indeed, in the same month that Defendants caused the Company to enter into the Promissory Note, Defendants took out an additional $28,118 in undocumented interest free "shareholder loans."

22.    In the fall of 2019, Mr. Hudson promised Plaintiff that Defendants would stop taking monies from the Company, and specifically represented that Defendants would stop taking out shareholder loans and would stop causing the Company to pay for Defendants' personal residence.

23. In or about December 2019, Paragon experienced yet another cash crunch. As he had done, many times before, Mr. Hudson turned to Plaintiff for additional capital. This time, Mr. Hudson requested that Plaintiff loan Paragon $150,000 and agree to forbear the collection of principal payments on the Promissory Note until March 2020. Plaintiff agreed to Mr. Hudson's request, but required Defendants to agree to additional safeguards aimed at preventing Defendants from continuing to loot the company. To that end, on December 17, 2019, the parties entered into a Forbearance Agreement. A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit B.** The Forbearance Agreement provided that:

  a. Plaintiff would loan Paragon an additional $150,000;

  b. Plaintiff would forbear the collection of the Promissory Note until March 2020;

  c. Paragon would lower its overhead expenses;

  d. Mr. and Mrs. Hudson would no longer be permitted to receive shareholder loans from the Company with the exception of loans for housing that would end as of March 31, 2020;

  e. Mr. and Mrs. Hudson would not increase their annual salaries or otherwise authorize themselves to receive additional compensation;

  f. Mr. and Mrs. Hudson's family members would stop receiving compensation unless the company could satisfy its obligations to Plaintiff;

  g. Mr. Hudson would be removed as a signatory on the Company's bank accounts; and

  h. Paragon would regularly inform Plaintiff of Paragon's financial progress and status.

24. In February 2020, Mr. Hudson fired Mr. Lunny on account of Mr. Hudson's belief that Mr. Lunny was somehow responsible for the restrictions put in place by the Forbearance Agreement and that Mr. Lunny had been causing the

Company to comply with the restrictions.

25. As of the date that Mr. Lunny was terminated, Defendants had looted well over a million dollars from the Company. Plaintiff reasonably estimates that, as of February 2020, Defendants owed $1,428,921 (not including interest) to the Company as follows:

| | |
|---|---|
| Outstanding shareholder loans | $867,160 |
| Rent and utilities for personal residence | $281,761 |
| Overpayments to Mr. Hudson's mother | $180,000 |
| Salary to Mrs. Hudson's mother | $100,000 |
| Total | $1,428,921 |

26. Plaintiff alleges on information and belief that the estimates provided in the preceding paragraph underestimate the monies misappropriated by Defendants and that the true amount owed by Defendants to Paragon can only be determined through an accounting.

27. In addition to the above, Defendants also caused the company to buy back approximately $224,603.65 of the company's shares from certain of Paragon's employees and transferred such shares to Mr. Hudson personally without any consideration.

28. As explained above, March 2020 was a significant month. Pursuant to the Forbearance Agreement, as of March 2020, the Hudson's could no longer borrow Company funds to pay for their personal housing and the forbearance period would end requiring Paragon to start making principal payments to Plaintiff.

29. In or about March 2020, Mr. Hudson began requesting that the obligations under the Forbearance Agreement be further postponed. Specifically, Mr. Hudson requested that he be permitted to cause Paragon to continue paying for his personal residence until the end of the lease and that Plaintiff continue to forbear

its loan obligations for another thirty days.

30. At the time Mr. Hudson made this request, the Company was being positioned for sale. Not wanting to disrupt any potential sale, Plaintiff indicated to Mr. Hudson that he would agree to Mr. Hudson's proposal on several conditions: (1) Mr. Lunny was to be permitted to have access to the company records, (2) Plaintiff was to be kept up to date on progress towards the sale of the Company, (3) Paragon hire an experienced accounting professional, (4) the shareholder loans be properly reconciled and any personal expenses improperly charged as personal costs be included, and (5) family member loans also be reconciled.

31. Upon receiving Plaintiff's proposal, Mr. Hudson flew into a rage and began actively acting against the interests of the Company and its shareholders. On March 20, 2020, Mr. Hudson abruptly fired the firm tasked with selling the Company and also sent an email to Paragon's management team instructing them that they could take a three month vacation. True and correct copies of emails from Mr. Hudson to this effect are attached as **Exhibits C** and **D**.

32. Then on March 21, 2020, Mr. Hudson texted Mr. Lunny and Plaintiff stating that Mr. Hudson would not talk about any of conditions presented by Plaintiff and, unless his demands were satisfied, (1) he and Paragon's entire management and development teams would be taking a three month vacation, (2) he would allow the Company's sales and value to "sink to zero", (3) he would cease his efforts to sell the Company, and (4) instead of selling the Company he would enter into a non-compete with a competitor to allowing him to receive a "great income" to "sit on [his] ass at home." A true and correct copy of the March 21, 2020 text correspondence is attached hereto as **Exhibit E.**

33. Defendants cannot be permitted to follow through with Mr. Hudson's threats. Paragon's business primarily involves operating its online adult content platform. Paragon itself does not generate any content for the platform; all of the videos posted to the site are submitted by content providers who share in the profits

their content generates.  If, for any reason, Paragon is unable to make payments to its content providers, the content providers are likely to move their content to a competitor's site.  Without the content providers, Paragon would have nothing to display on its site and Paragon's sales would truly "sink to zero."  Moreover, Paragon's reputation amongst the content providers would be so irreparably harmed that Paragon would be unlikely to ever recover.

34. Paragon is extremely valuable as an ongoing entity; however, if Paragon lost its content providers and the Company was forced into liquidation, there would be very little to distribute to the shareholders.  Paragon has no significant physical assets.  It owns no real property.  Its personal property consists of computer and internet equipment with limited resale value.  Only Paragon's intellectual property, including the website and Paragon's client and content provider lists, have any significant value.

35. To ensure that Defendants do not follow through with their threats to destroy the Company, whether by purposefully driving down Paragon's sales or by simply allowing Paragon's content providers to go unpaid because the entire management team is on a three month vacation, Plaintiff and the other shareholders are entitled to the appointment of a receiver who can ensure that (1) Paragon's online platform continues to operate and receive income, (2) Paragon's finances are managed and the content providers are paid timely and in full, and (3) Defendants cannot continue looting the Company.

36. The conduct and activities of Defendants as described herein, if allowed to continue, will result in immediate and irreparable harm to Paragon for which there is no adequate remedy at law to compensate Plaintiff and the other shareholders.  Accordingly, Plaintiff and the other shareholders are entitled to temporary and preliminary injunctive relief enjoining and restraining Defendants, their agents, servants, employees, and all persons acting under, in concert with, or for them from, directly or indirectly:

a. Interfering with, altering, or materially changing the contracts and economic relationships between nominal defendant Paragon Technology & Development, Inc. and its wholly owned subsidiary, Gatsby Enterprises, Inc. (collectively "Paragon" or the "Company") and their customers, content providers, employees, investors, merchant accounts, and business partners;

b. Interfering with, altering, or materially changing the websites owned and operated by Paragon, including the websites under the domain name iwantclips.com, (collectively, the "Website"), including without limitation modifying, altering, or materially changing in any way the Website's domains, webhosting services, customer management systems, referral leads, or payment systems;

c. Interfering with Paragon's employees or causing Paragon's employees to fail to perform their ordinary duties and responsibilities;

d. Transferring, licensing, encumbering, exchanging, expending, pledging, loaning, or otherwise disposing of, directly or indirectly, any Paragon asset other than in the ordinary course of business;

e. Transferring, licensing, encumbering, exchanging, pledging, loaning, or otherwise disposing of, directly or indirectly, Paragon's ownership interests in the Website and any other intellectual property;

f. Transferring, licensing, encumbering, exchanging, pledging, loaning, or otherwise disposing of, directly or indirectly, any of their ownership interests in Paragon;

g. Competing against Paragon, or assisting any of Paragon's competitors, including without limitation by disclosing Paragon's confidential information;

h. Entering into any contractual relationship transferring the goodwill of the Company, including an agreement not to compete;

i. Communicating with or entering into any agreement,

commitment or letter of intent with any person or entity for the purpose of selling, transferring, licensing, encumbering, exchanging, pledging, or otherwise disposing of, directly or indirectly, any ownership interest in Paragon;

      j.     Converting any debt or other obligation of Paragon into equity of Paragon; or

      k.     Committing Paragon to incur any indebtedness or otherwise become liable to any party for any reason other than indebtedness or liability incurred in the ordinary course of the Company's business.

## FIRST CLAIM FOR RELIEF
## (Breach of Fiduciary Duty)

37. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 35 as though set forth fully herein.

38. As directors, officers, and majority shareholders of Paragon, Defendants stood in a fiduciary relationship with Plaintiff and the other shareholders and owed Plaintiff and the other shareholders duties of care and loyalty.

39. Defendants breached their fiduciary duties in a myriad of ways, including without limitation by:

      a.     Borrowing hundreds of thousands of dollars from the Company through undocumented interest free "shareholder loans."

      b.     Causing the Company to pay for their luxury personal residence and lifestyle;

      c.     Causing the Company to pay a salary to Mrs. Hudson's mother who did not work for the Company;

      d.     Causing the Company to pay Mr. Hudson's parents hundreds of thousands of dollars; and

      e.     Causing stock repurchased by the Company to be transferred to Defendants personally without consideration.

40. As explained in more detail in paragraphs 31 and 32 above, Mr.

Hudson has threatened to further devalue the company by (1) causing Paragon's management and development teams to take a three month vacation, (2) purposefully driving down the Company's sales and value so that they to "sink to zero", (3) ceasing all efforts to sell the company, and (4) entering into a non-compete with a competitor to allowing Mr. Hudson to receive a "great income" to "sit on [his] ass at home."

41. As a direct and proximate result of the above-described breaches of Defendants' fiduciary duties, Paragon (and by extension Plaintiff and the other shareholders) has suffered damages in an amount to be determined at trial, but not less than $2,000,000.

42. Plaintiff is informed and believes, and on that basis alleges, that in doing the acts described above, Defendants acted with malice and with the specific intent to injure Plaintiff and the other shareholders. Plaintiff, therefore, seeks an award of exemplary and punitive damages in an amount to be determined at the time of trial.

43. The conduct and activities of Defendants as described herein, if allowed to continue, will result in immediate and irreparable harm to Paragon for which there is no adequate remedy at law to compensate Plaintiff and the other shareholders. Accordingly, Plaintiff and the other Shareholder are entitled to have a receiver appointed to ensure that (1) Paragon's online platform continues to operate and receive income, (2) Paragon's content providers are paid timely and in full, and (3) Defendants cannot continue looting the Company.

44. Plaintiff and the other shareholders are also entitled to temporary and preliminary injunctive relief set forth in paragraph 36 above.

## SECOND CLAIM FOR RELIEF
### (Embezzlement / Conversion)

45. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 43 as though set forth fully herein.

46. Plaintiff is informed and believes and on that basis alleges that Defendants have embezzled and converted Paragon's property as alleged in paragraphs 19 - 27 above.

47. As a direct and proximate result of the above-described embezzlements and conversions, Paragon (and by extension Plaintiff and the other shareholders) has been damaged in an amount to be determined at trial, but not less than $2,000,000.

48. Plaintiff is informed and believes, and on that basis alleges, that in doing the acts described above, Defendants acted with malice and with specific intent to injure Plaintiff and the other shareholders. Plaintiff, therefore, seeks an award of exemplary and punitive damages in an amount to be determined at the time of trial.

49. The conduct and activities of Defendants as described herein, if allowed to continue, will result in immediate and irreparable harm to Paragon for which there is no adequate remedy at law to compensate Plaintiff and the other shareholders. Accordingly, Plaintiff and the other Shareholder are entitled to have a receiver appointed to ensure that (1) Paragon's online platform continues to operate and receive income, (2) Paragon's content providers are paid timely and in full, and (3) Defendants cannot continue looting the Company.

50. Plaintiff and the other shareholders are also entitled to temporary and preliminary injunctive relief as set forth in paragraph 36 above.

## THIRD CLAIM FOR RELIEF
### (Corporate Waste)

51. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 49 as though set forth fully herein.

52. As directors, officers, and majority shareholders of Paragon, Defendants stood in a fiduciary relationship with Plaintiff and the other shareholders and owed Plaintiff and the other shareholders the duty of care and diligence in the administration of the affairs of Paragon and in the use of Paragon's assets.

53. Plaintiff is informed and believes and on that basis alleges that Defendants have committed corporate waste by entering into exchanges that are so one sided that no business person of ordinary, sound judgment could conclude that Paragon has received adequate consideration. Such wasteful exchanges, include without limitation:

    a. Borrowing hundreds of thousands of dollars from the Company through undocumented interest free "shareholder loans."

    b. Causing the Company to pay for their luxury personal residence and lifestyle;

    c. Causing the Company to pay a salary to Mrs. Hudson's mother who did not work for the Company;

    d. Causing the Company to pay Mr. Hudson's parents hundreds of thousands of dollars; and

    e. Causing stock repurchased by the Company to be transferred to Defendants personally without consideration.

54. As a direct and proximate result of the above-described corporate waste, Paragon (and by extension Plaintiff and the other shareholders) has been damaged in an amount to be determined at trial, but not less than $2,000,000.

55. Plaintiff is informed and believes, and on that basis alleges, that in doing the acts described above, Defendants acted with malice and with specific intent to injure Plaintiff and the other shareholders. Plaintiff, therefore, seeks an award of exemplary and punitive damages in an amount to be determined at the time of trial.

56. The conduct and activities of Defendants as described herein, if allowed to continue, will result in immediate and irreparable harm to Paragon for which there is no adequate remedy at law to compensate Plaintiff and the other shareholders. Accordingly, Plaintiff and the other Shareholder are entitled to have a receiver appointed to ensure that (1) Paragon's online platform continues to operate

and receive income, (2) Paragon's content providers are paid timely and in full, and (3) Defendants cannot continue looting the Company.

57. Plaintiff and the other shareholders are also entitled to temporary and preliminary injunctive relief as set forth in paragraph 36 above.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

58. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 56 as though set forth fully herein.

59. Defendants derived property from Paragon to which they were not entitled, including without limitation:

    a. Hundreds of thousands of dollars in undocumented interest free "shareholder loans."

    b. Rent and utilities paid for Defendants' luxury personal residence;

    c. Salary paid to Mrs. Hudson's mother who did not work for the Company on Paragon's payroll; and

    d. Hundreds of thousands of dollars paid directly to Mr. Hudson's parents; and

    e. Stock repurchased by the Company from its employees.

60. Defendants' unjust enrichment is directly and causally related to the detriment of Paragon. Plaintiff alleges on information and belief that, but for Defendants' unjust enrichment, the Company could have operated at a profit and distributions could have been made to Plaintiff and the other Shareholders.

61. Defendants' enrichment was accepted under circumstances such that it would be unjust for Defendants' to retain such benefits without payment to Paragon.

## FIFTH CLAIM FOR RELIEF
### (Accounting)

62. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 60 as though set forth fully herein.

63. As set forth in paragraphs 19 - 27 above, Plaintiff is informed and believes that Defendants have misappropriated and misused property belonging to Paragon.

64. The amount that Defendants have misappropriated and misused is not fully known by Plaintiff and is only ascertainable by an accounting.

65. An accounting is therefore necessary to determine the amount obtained by Defendants as a result of their misconduct as set forth above.

## FIFTH CLAIM FOR RELIEF

### (Appointment of Receiver)

66. Plaintiff refers and incorporates by reference the allegations of paragraph 1 through 64 as though set forth fully herein.

67. Under Delaware law, a shareholder may bring a claim for relief for the appointment of a receiver. (See, e.g. *Glenbrook Capital Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130, 1147 (N.D. Cal. 2007).)

68. As set forth in paragraphs 19 – 27 above, Defendants have grossly mismanaged Paragon by looting Paragon's property for their own benefit.

69. Mr. Hudson has threatened to further devalue the company by (1) causing Paragons entire management and development teams to take a three month vacation, (2) purposefully driving down the Company's sales that they to "sink to zero", and (3) ceasing all efforts to sell the company, and (4) entering into a non-compete with a competitor to allowing him to receive a "great income" to "sit on [his] ass at home."

70. The conduct and activities of Defendants as described herein, if allowed to continue, will result in immediate and irreparable harm to Paragon for which there is no adequate remedy at law to compensate plaintiff and the other shareholders. Accordingly, Plaintiff and the other Shareholder are entitled to have a receiver appointed to ensure that (1) Paragon's online platform continues to operate and receive income, (2) Paragon's content providers are paid timely and in full, and

(3) Defendants cannot continue looting the Company.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims for which he has a right to trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment on his Complaint as follows:

1. For general, special, compensatory and consequential damages according to proof against Defendants for all losses and damages suffered as a result of the wrongful acts described herein;

2. For a complete verified accounting from Defendants of all monies they received from the Company or paid out from the Company and an order directing the immediate disgorgement of all monies improperly diverted;

3. For an order requiring Defendants to show cause, if they have any, why a receiver should not be appointed to ensure that (1) Paragon's online platform continues to operate and receive income, (2) Paragon's content providers are paid timely and in full, and (3) Defendants cannot continue looting the Company

4. For an order requiring Defendants to show cause, if they have any, why they should not be restrained and enjoined as set forth in paragraph 36 of this Complaint during the pendency of this action;

5. For a temporary restraining order, a preliminary injection and a permanent injunction enjoining and restraining Defendants as set forth in paragraph 36 above.

6. For exemplary and punitive damages according to proof at the time of trial;

7. For reasonable attorneys' fees and costs of suit incurred herein as allowed by law;

8. For pre-judgment and post-judgment interest on the amount recovered at the highest legal rate from the earliest legal date; and

9. For such other and further relief as the Court may deem just and proper.

DATED: April 7, 2020  JULANDER, BROWN & BOLLARD

By: /s/ Dirk Julander
Dirk Julander
M. Adam Tate
Attorneys for To Be Limited Partnership